## 18033

Delora GUTHKE, Plaintiff-Respondent, v. Luther MORRIS, Defendant-Respondent, and Victoria Johnson, Defendant-Appellant.

(129 S. E. (2d) 732)

*Messrs. Moore & Mouzon,* of Charleston, *for Appellant,*

*Messrs. Rittenberg, Seymour & Graham,* of Charleston, *for Plaintiff-Respondent, Delora Guthke,*

58

*Messrs, Legare & Hare, Connor & Connor and Barnwell, Whaley, Stevenson, & Patterson,* of Charleston, *for Defendant-Respondent, Luther Morris,*

February 19, 1963.

BRAILSFORD, Justice.

This is an automobile collision case. One vehicle was driven by Victoria Johnson and the other by Luther Morris.

Delora Guthke, Mrs. Johnson's daughter, who was a passenger in her automobile, was injured. She brought an action against both drivers, and Luther Morris filed a cross-action against Victoria Johnson. The jury awarded damages against Mrs. Johnson in both the main action and the cross-action and she has appealed. The exceptions charge error in the trial court's refusal to grant her motions for non-suit and directed verdict and charge error in the instructions to the jury.

Near the City of Charleston, Cunnington Street intersects Huguenin Avenue from the west. Magnolia Cemetery is east of Huguenin Avenue. Access to it is through a 13 foot gate which is directly opposite the Cunnington Street intersection. A paved drive or roadway extends from Huguenin Avenue 25 feet east to this gate. A solid brick wall parallel with Huguenin Avenue and 25 feet east of it extends north and south from the cemetery entrance.

Mrs. Johnson, her daughter and son-in-law visited the cemetery on the occasion in question, as they frequently did, for the purpose of caring for the family lot. They traveled in Mrs. Johnson's car which she drove. Their route to the cemetery was along Cunnington Street, across Huguenin and into the cemetery by means of the drive and gate. Huguenin is a through highway. Stop signs were in place at intersecting streets, including Cunnington. However, there was no sign between the cemetery gate and Huguenin. On completing their mission at the cemetery, Mrs. Johnson drove through the gate toward the highway. As she did so, Luther Morris and his brother approached the intersection from the north on Huguenin Avenue driving a dealer's automobile which they were trying out. Mrs. Johnson drove into the intersection and the two cars were in collision, near the center of Huguenin according to some of the testimony and a few feet west of the center according to other testimony. The right front of the Morris car struck the right rear of the Johnson car.

There is sharp conflict in the testimony as to the speed of the Morris automobile, as to the manner in which the Johnson car approached and entered the highway and as to its location on the highway at the moment of impact. Under the well understood rule, we are not at liberty to weigh the evidence. Instead, we must view it in the light most favorable to the verdicts. There was testimony that the Morris automobile approached the intersection at a speed of from 30 to 35 miles per hour and that the proximate cause of the collision was the unlawful conduct of Mrs. Johnson in driving suddenly out of the gate and into the intersection, without yielding the right of way to traffic on the through highway, as she was required to do. Luther Morris and his brother both testified, in effect, that they saw the automobile as it cleared the gate, or immediately afterward. They made no attempt to estimate its speed, but on observing its approach the brother made an exclamation, and both of them realized that a collision was imminent. Luther Morris immediately applied brakes, laying down one skid mark for 65 feet. He testified that he undertook to veer to the left in an attempt to avoid the collision. It may be inferred from some of the testimony as to the point of impact on the highway and on the respective vehicles that he almost succeeded in doing so.

On the other hand, Mrs. Johnson and the passengers in her automobile testified that she drove out of the cemetery gate and approached the highway very slowly. We quote from her testimony:

"Q. All right—Now, will you tell the court and the jury what occurred as you left the cemetery, Mrs. Johnson?

"A. Well, as we were leaving the cemetery, I came almost to a complete stop—not quite a complete stop—at the gate, and I looked both ways, and I did not see a car coming until—I mean, I didn't know it was coming—until my daughter said, momma, look out, and then I heard the brakes squeaking on the pavement, and I did not see the car until after the wreck."

\* \* \*

"Q. And what did you do—at that moment?

"A. Well, I tried my best to make it across the street, and I was almost across."

* * *

"* * * I gave it the gas and tried to get across the best I could."

Mrs. Guthke was uncertain whether she saw the Morris car before her attention was attracted by the squeal of tires. She testified that the Johnson car was "almost completely over Huguenin, into Cunnington * * *" when she saw or heard it and "hollered Mama, look out * * *". However, a reasonable inference arises from the testimony that the automobile had not entered the highway when Mrs. Johnson's attention was called to the approach of the Morris car. If the latter was being driven at from 30 to 35 miles per hour, as we must assume, it is more reasonable to infer that the Johnson car was near the cemetery gate when Morris applied his brakes, as he and his brother testified, than that it was already in the intersection. If the latter had been the case, Mrs. Johnson could almost surely have cleared the intersection while Morris was laying down 65 feet of skid marks. It was for the jury to decide whether Mrs. Johnson could have avoided the collision, even after she was belatedly alerted to the danger, by yielding the right of way instead of accelerating her speed.

The record establishes that on emerging from the cemetery gate a traveler has a view of Huguenin Avenue for some 1200 feet to the north. The only obstructions to vision are three power poles. The first of these is 27 feet from the center of the cemetery driveway and 13.5 feet from the edge of Huguenin Avenue, the next 45 feet from the center of the driveway and 17 feet from Huguenin and the last 109 feet from the center of the driveway and 15.5 feet from Huguenin. The inference is that if Mrs. Johnson had looked to the north during the last 13 feet before entering the intersection she would have seen the Morris car. Whether her failure to do so was excusable or

culpable and, if the latter, the degree of her culpability were questions which could not soundly have been resolved in her favor by the trial judge.

The exceptions to the refusal of the trial judge to grant the appellant's motions for orders of non-suit raise no distinct issues because we must consider all of the evidence in deciding whether the cases were properly submitted to the jury. *Williamson v. Charleston and W. C. R. Co.,* 222 S. C. 455, 73 S. E. (2d) 537. We conclude that they were. Our reasons have been sufficiently stated except as to the contention that the Morris car was equipped with defective brakes. Assume that the brakes were defective. The car had been turned over to Morris by an automobile dealer for a tryout. The record does not fasten responsibility on him for the condition of the brakes, nor establish as a matter of law that he was contributorily negligent in failing to discover it. More than one reasonable inference can be drawn from the evidence as to whether Morris was guilty of contributory negligence. Hence, the issue was properly submitted to the jury.

The remaining exceptions charge that the trial judge erred in reading to the jury three inapplicable sections of the Uniform Act Regulating Traffic (Code of Laws, 1962, § 46-201 et sequa). These exceptions are all based upon appellant's contention that she was under no statutory duty to stop before entering Huguenin Avenue from the cemetery driveway.

The first of these exceptions refers to Section 46-267 which simply defines the well understood meaning of the word *stop.* We fail to see how the reading of this definition could have resulted in prejudice to appellant.

The second refers to Section 46-423, the first paragraph of which defines the duty of a motorist before entering a through highway, the error assigned "being that the said section was inapplicable because as to the appellant, Huguenin Avenue was not a through highway,"

as defined by statute. This exception is without merit because the testimony clearly shows that Huguenin Avenue was a through highway as defined by Section 46-252, with stop signs in place at intersecting highways. If appellant was not under a statutory duty to stop, unless a stop was necessary to yield the right of way (which we do not decide), it was because she entered the highway from a private drive at which no stop sign was in place or required.

The last refers to Section 46-475 which defines the ■ duty of a motorist emerging from a driveway in a business or residence district and requires a stop. We agree that this section should not have been charged because the evidence clearly shows that the area on both sides of the highway at the location in question was occupied by cemeteries. However, for the reasons hereafter stated, which are equally applicable to Section 46-423, we are satisfied that no prejudice resulted to appellant. She contends that her duty on entering the highway was fixed by Section 46-424, which was also read to the jury, as follows: "The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway." Concede that the quoted section was controlling. Under the situation which confronted Mrs. Johnson when she was about to enter the highway, the duty to stop was just as imperative as it would have been had a stop sign been in place or had the driveway been in a residential or business district. She could obey the statutory mandate to yield the right of way only by stopping. Her failure to do so violated the statute.

Furthermore, at the conclusion of his general charge on the issues relating to liability, including the reading of the sections complained of and other sections relating to right of way, the trial judge gave certain instructions at appellant's request. By one of these he instructed the jury that "a motorist entering a highway from a private gate or drive" is required "to yield the right of way to traffic on the highway;" but "this does not necessarily mean that the motorist must

stop before entering the highway. The statute only requires that the motorist" exercise due care under the circumstances.

This was tantamount to telling the jury that Section 46-424 was controlling and construing it favorably to appellant.

When the charge is construed as a whole, we find no prejudicial error. In the absence of prejudice, an erroneous instruction is not ground for reversal. *Ellison v. Simmons,* 238 S. C. 364, 120 S. E. (2d) 209.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.